UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| VERE O. PLUMMER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) C. A. No. 15-cv-2147 (RDM) |
| | ) |
| DISTRICT OF COLUMBIA, *et al.*, | ) |
| | ) |
| Defendants. | ) |

**REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANTS'MOTION FOR SUMMARY JUDGMENT**

The Defendants District of Columbia ("the District"), Metropolitan Police Department

("MPD"), Fire and Emergency Medical Services ("FEMS"), Battalion Fire Chief Henry Welsh

("Chief Welsh"), MPD Lieutenant John Kutniewski ("Lieutenant Kutniewski"), MPD Police

Officer  Sandro Lukanovic, ("Officer Lukanovic"), and MPD Police Officer John Nelson

("Officer Nelson") (collectively "Defendants" or "District Defendants"), respond to Plaintiff's

opposition by submitting this reply memorandum of points and authorities in support of their

motion for summary judgment [15-2].  As more fully explained below, the District Defendants'

motion should be granted because Plaintiff concedes some arguments, misstates the facts[1],

misapplies the law and relies on incorrect principles of law.

---

[1] Plaintiff incorrectly states that the District Defendants "have not filed an answer to … the
complaint and the Office of the Attorney General has not yet to submit arguments in their
defense."  Pl. Memo. at 1-2.  The District Defendants filed an answer to the amended verified
complaint [4] on January 4, 2016.  Additionally, the District Defendants asserted in their answer
eighteen defenses.

**Argument**

## I.    Issues conceded

### a.    **Lieutenant Kutniewski**

Plaintiff seeks to hold Lieutenant Kutniewski liable under Count I for committing the common law tort of false arrest.  However, Lieutenant Kutniewski never went to the scene, and there is no evidence that he approved, direct, or ordered the arrest of Plaintiff.  Defendants' Statement of Material Facts (DSOF) 108 [14-1].  This fact is undisputed by Plaintiff.  Pl. Response to Statement of Material Facts, #108 [18 at 44].  Further, it is undisputed that there is no evidence that Lieutenant Kutniewski had any contact with Plaintiff when Plaintiff was at the Third District police station.  *Id*., #109.

In his opposition, Plaintiff does not address Lieutenant Kutniewski's liability under Count I or any of the other Counts for that matter.  Plaintiff cites no case that would support holding law Lieutenant Kutniewski liable for events he had no involvement in.  Accordingly, summary judgment should be granted as to Lieutenant Kutniewski.

### b.    **MPD and FEMS, Counts II, III and IV**

Plaintiff concedes and "stipulates to th[e] argument" that MPD and FEMS are not suable entities.  Pl. Memo. at 1-2.  Plaintiff agrees that Count II should be dismissed.  The Defendants' argument, however, was not limited to Count II.  The arguments asserted on behalf of MPD and FEMS also included Count III (claim for false imprisonment in violation of the Fourth and Fifth Amendments against "MPD and its employees.") and Count IV (claim for negligence against the MPD) because Plaintiff has asserted these claims  as "separate cause[s] of action" against MPD and FEMS.  Memorandum in Support of Summary Judgment (SJ Memo) [15-2 at 10-13].  Plaintiff made no arguments in opposition to these Counts.  Plaintiff has not opposed dismissal

of Counts III and IV, and these counts should be dismissed for the same reason Plaintiff

stipulates to the dismissal of Count II.  Alternative, this Court should deem Defendants'

arguments as to Count II and IV as conceded by Plaintiff.  *See Hopkins v. Women's' Div., Gen.*

*Bd. Of Global Ministries*, 238 F.Supp. 2d 174, 178 (D.D.C. 2002) ("when a plaintiff files an

opposition to motion to dismiss addressing only certain arguments raised by the defendant, [the

Court] may treat those arguments that the plaintiff failed to address as conceded.").

Accordingly, Counts II, III and IV should also be dismissed.

> **c.**      **Malicious prosecution, Count** VI

The District Defendants have moved for summary judgment as to Plaintiff's malicious

prosecution claim against "the MPD."  Count VI.  The crux of the District Defendants' argument

is that Plaintiff cannot prove an essential element – lack of probable cause – of his malicious

prosecution, and for that reason, the District Defendants are entitled to summary judgment as a

matter of law.  Count VI.  Lieutenant Kutniewski and Officer Lukanovic further argued that they

had no involvement with initiating criminal charges against Plaintiff, and therefore they could

not be held liable for malicious prosecution.  SJ Memo at 35.  Plaintiff totally ignored these

arguments and failed to offer any argument, factual or legal, in opposition.  Thus, Plaintiff has

conceded that there was probable cause to initiate criminal charges against him.  Plaintiff also

concedes that Lieutenant Kutniewski and Officer Lukanovic were not responsible for criminal

charges being brought against him.  Accordingly, summary judgment should be granted as to the

malicious prosecution claim asserted in Count VI.

> d**.**      **Summary judgment should be granted as to Plaintiff's Fifth Amendment**
> **claims in Counts III and V**

Plaintiff does not address the District Defendants' argument that the Fifth Amendment

claim fails because the Fourth Amendment is the appropriate constitutional provision that

protects Plaintiff from unlawful seizures.  SJ Memo at 16-17.  Plaintiff claims that "Defendant

bases their argument on a notion that [Plaintiff] failed to include the Fourth Amendment as one of the

reasons in his complaint as to why he is entitled to a judgment here."  Opp. at 12.  This was not the

District Defendants' argument, as the Defendants are well aware that Plaintiff has asserted a claim

under the Fourth Amendment.  Defendants' argument is that "[w]here a particular Amendment

provides an explicit textual source of constitutional protection against a particular sort of

government behavior, that Amendment, not the more generalized notion of [the Fifth

Amendment], must be the guide for analyzing these claims."  *Albright v. Oliver*, 510 U.S. 266,

273 (1994) (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989).  SJ Memo at 17.  And it is

the Fourth Amendment that provides the "explicit textual source of constitutional protection"

against subjecting citizens to searches and seizures without probable cause.  *Id*.  Thus, as the

District Defendants' argued, Plaintiff's constitutional claims are governed under Fourth

Amendment standards rather than the more generalized under Fifth Amendment standards.

Here again, Plaintiff has not opposed this argument.  Plaintiff does not explain why he

should be allowed to proceed with his Fifth Amendment claim, or how his Fifth Amendment

claim differs from his Fourth Amendment claim.  Since Plaintiff has not addressed these issues

or presented any arguments in opposition to the Defendants' arguments, Plaintiff has conceded

that the Fifth Amendment does not apply to this case.  Accordingly, summary judgment should

be granted for the District Defendants' as to Plaintiff's Fifth Amendment claims in Counts III

and V.

> **e.      The District is entitled to summary judgment as to the road defect claim,
> Count VII**

Plaintiff submitted no opposition to summary judgment as to his road defect claim as

asserted in Count VII.  The District is entitled to judgment as a matter of law because there is no

evidence that the District had notice of a dangerous condition.  SJ Memo at 37-40.  Further, even if a dangerous condition did exit, Plaintiff lacks expert testimony as to the applicable standard of care in repairing and maintaining brick roadways.  Accordingly, the District is entitled to summary judgment as a matter of law.

II.      **Plaintiff failed to comply with D.C. Code § 12-309**

On the issue of Plaintiff's compliance with the notice provisions in D. C. Code § 12-309, the District set forth two arguments: 1) the January 4, 2016 notice was untimely because it was received by the ORM on January 13, 2015, which is more than six months after Plaintiff's arrest on July 5, 2014; and 2) the statement of facts in the police report were insufficient to put the District on notice of a possible lawsuit against it for the common law claims of false arrest and malicious prosecution.  SJ Memo at 13-15.  Plaintiff did not oppose the District's first argument and conceded that the January 13, 2015 was untimely.  Opp. at 4.

As for the second argument, Plaintiff contends that the facts in the police report showed that Plaintiff was arrested for committing a misdemeanor offense and in order for the arrest to be lawful the offense had to be committed in the presence of the police.  Plaintiff argues that because neither Officer Nelson nor MPO Arrington witnessed Plaintiff hitting his neighbor garage with his car, D. C. § 23-581 did not authorize Officer Nelson to arrest Plaintiff for leaving the scene of an accident without making himself known as prohibited by D. C. Code § 50-2201.05(c ).   Opp. 4-11.

In support of his argument, Plaintiff relies on a 1984 decision by the Court of Appeals in *Schram v. District of Columbia*, 485 A. 2d 623 (D.C. 1984).  In that case, Ms. Schram was arrested for a misdemeanor offence of driving while intoxicated following a car accident. However, when the police arrived on the scene Ms. Schram was standing outside of her car and

therefore, she was not driving in the presence of the police. The Court of Appeals reversed Ms.

Schram's conviction because § 23-581(a)(1)(B) only authorized misdemeanor arrests for

offenses committing in the presence of a police officer. *Id.*, at 264. In this case, Plaintiff claims

that because none of the Defendant police officers witnessed Plaintiff crash into the garage, the

facts in Officer Nelson's arrest report set forth elements of a lawful arrest. Opp. at 4-11. Thus,

Plaintiff argues that Officer Nelson's arrest report satisfied § 12-309 because the report put the

District on notice of a possible false arrest claim. *Id.*

Plaintiff's reliance on *Schram* is misplaced as that case is distinguishable from the instant

case. In this case, a police officer can arrest without a warrant under § 23-581(a)(1)(D), which

authorizes the arrest of:

> "a person whom he has probable cause to believe has committed any offense which
> is listed in paragraph (3) of this section, if the officer has reasonable grounds to believe
> that, unless the person is immediately arrested, reliable evidence of alcohol or drug use
> may become unavailable or the person may cause personal injury or property damage."

D.C. Code § 23-581(a)(1)(D). And paragraph (3) provides:

> "(3) The offenses which are referred to in paragraph (1)(D) of this section are the
> following offenses specified in the District of Columbia Traffic Act of 1925, approved
> March 3, 1925 (43 Stat. 1119; D.C. Official Code § 50-2201.01 et seq.) …"

D.C. Code § 23-581(a)(1)(D)(3). The District's traffic laws, make it unlawful for the operator of

a motor vehicle, "who know[s] or has reason to believe" that a collision has caused damage to

property belonging to another, to leave the scene of the accident without making their identity

known to the property owner or to the police. D.C. Code 50-2201.05c.

The facts known to the Defendant Officers were sufficient to establish probable cause

that Plaintiff was violating the law by not making his identify known. After crashing into Mr.

Taylor's garage, Plaintiff made no attempt to contact Mr. Taylor or leave his contact information

at the scene. Instead, Plaintiff backed his car into his own garage and went to sleep. Plaintiff

6

refused to get out of the car once the police were on the scene.  Moreover, Plaintiff made his intentions known when he told the 911 operator several times that he wants to go home or that he wants to go to sleep.  *Id.*, at 3:18 ("…I'm trying to go into my house …"); at 3:51 ("I want these people to get from in front of my car so that I can go into the house."); at 6:24 ("You need to get these people from in front of me. Cause I need to go into my house.); at 9:25 ("I want to go home and go to bed. I can't, I cannot go home and go to bed."), at 10:35 ("… its five o'clock in the morning, and I want to go to sleep."); at 11:21 ("This is false imprisonment, because I can't move out of my car. I can't go home and go to sleep."); and at 13:13 ("I'm under seize. I want to go to bed.").  At no time did Plaintiff give any indication that he was going to contact Mr. Taylor to report the damages Plaintiff caused to Mr. Taylor's garage.

Further, there were sufficient facts supporting probable cause because the facts of this case could lead a prudent person to reasonably believe that if Plaintiff was not arrested he could cause further injury to a person or property.  D.C. Code § 23-581 (a)(1)(D).  As Plaintiff sat in his car, the engine was still running when the police arrive.  According to MPO Arrington, Plaintiff "cranked" his engine.  MPO Arrington testified that he was concerned that Plaintiff could drive out of the garage, have another accident or hit a person.  Arrington Dep. P62:19-P63:3.  In his police report, Officer Nelson states that Plaintiff "started his engine as if he was threatening to drive the vehicle with the officers still inside the cramped garage."  SJ-Exhibit 11 at 4 [14-13].

These facts were not before the Court in the *Schram* case.  Additionally, the opinion in *Schram* did not address the type of situation faced by the Defendant police officers in this case. Contrary to Plaintiff's assertion, Officer Nelson's police report clearly set forth facts that show the lawful arrest of Plaintiff, and therefore, the police report did constitute proper notice for

purposes of satisfying § 12-309.  Accordingly, the District is entitled to summary judgment as to

Plaintiff's common law claims in Counts V and VII.[2]

### III.   **Chief Welsh**

Chief Welsh argued that he is entitled to summary judgment because none of the seven

counts in the complaint are asserted against him and since he is not the employer of the other

individual defendants he cannot be held liable under a theory of respondeat superior for their

conduct.  SJ memo at 15-16.  Plaintiff counters these arguments by asserting that Chief Welsh's

name appears in the caption of the complaint as a defendant, the facts in the complaint detail

Chief Welsh's involvement and Plaintiff request judgments against "all Defendants."  Opp. at

11-12.  Thus, Plaintiff argues, it is "against public policy to allow Chief Welsh to be dismissed

from this case" and that Chief Welsh had an active role in ensuring that that the officers arrest

[Plaintiff] without any probable cause."  *Id*.

Plaintiff's argument is ludicrous.  Plaintiff does not identify a public policy that would be

violated if judgment was entered in favor of Chief Welsh.  Plaintiff does not cite to any case law

or statutory authority to support his argument.  Plaintiff does not even cite to admissible fact in

the record that would show that Chief Welsh took an active role in having Plaintiff arrested.

These self-serving states by Plaintiff are insufficient to defeat summary judgment.  *Harding v.

Gray*, 9 F.3d 150, 154 (D. C. Cir. 1993) ("mere unsubstantiated allegation . . . creates no genuine

issue of fact and will not withstand summary judgment"); *Bryant v. Brownlee*, 265 F. Supp. 2d

52, 68 (D.D.C. 2003) (conclusory allegations in affidavit opposing summary judgment do not

raise genuine issue of material fact); *Sage v. Broad. Publs.*, 997 F. Supp. 49, 53 (D.D.C. 1998)

---

[2] If the Court interprets Counts I, II and IV as being brought against the District, then this
argument is applicable to those Counts.

("mere denial of the facts alleged in a properly supported motion for summary judgment is not enough to meet the non-moving party's burden").

Moreover, Fed. R. Civ. P. 8(a) states in pertinent part that a plaintiff must set forth "a short and plain statement of the claim showing that pleader is entitled to relief." Fed. R. Civ. P. 8(a). Rule 8 in its entirety sets forth a requirement of "notice pleading," in that plaintiff must "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Gore v. First Union National Bank*, C. A. No. 01-2166, 2002 U.S. Dist. LEXIS 14396, *10 (D.D.C. 2002)(quoting *Conley v. Gibson,* 355 U.S. 41, 47, 2 L. Ed. 2d 80, 78 S. Ct. 99 (1957). And, "if plaintiff is asserting a claim for constitutional violations he should do so with the requisite specificity, so as to give defendants notice, plead the involvement of each defendant and clarify what constitutional right has been violated." *Jarell v. Tisch*, 656 F. Supp.237, 239 (D.D.C. 1987).

Here, Plaintiff has not put Chief Welsh on notice as to which of the seven counts he seeks to hold Chief Welsh liable. Neither Chief Welsh not this Court should have to guess what cause of action is to be asserted against Chief Welsh. Even in his opposition, Plaintiff does not state which of the seven counts are applicable to Chief Welsh. Accordingly, summary judgment should be entered in favor of Chief Welsh and against Plaintiff.

**IV.    There was probable cause for Plaintiff's arrest, and therefore, the Defendants are entitled to summary judgment**

Plaintiff's opposition is insufficient to defeat the Defendants' entitlement to summary judgment as to both the common law claim for false arrest and false imprisonment (Count I) and the alleged false arrest in violation of the Fourth Amendment (Count III). On these issues, the Defendants will rely on the arguments set forth in their brief.

**V.     The Individual Defendants are entitled to qualified immunity**

Plaintiff argues that qualified immunity does not apply to this case because "this issue should have been litigated at the onset of litigation." Opp. at 14. This is a clear misstatement of the law. "[D]efendants are permitted to raise the defense of qualified immunity at successive stages of the same case independently of earlier determinations because of the importance of resolving immunity questions at the earliest possible stage of litigation. *Olanyi v. District of Columbia*, 763 F.Supp.2d 70, 99 n. 24 (D.D.C. 2011) (quoting *Hunter v. Bryant*, 502 U.S. 224, 227, (1991) (per curiam) (internal quotations marks omitted). And, "[i]ndeed, the legally relevant factors bearing upon the [qualified immunity] question will be different on summary judgment than on an earlier motion to dismiss, because on summary judgment . . . the plaintiff can no longer rest on the pleadings." *Id.*, (quoting *Behrens v. Pelletier*, 516 U.S. 299, 309 (1996).

Plaintiff further argues that he has "satisfied both prongs of the test" under *Saucier v. Katz*, 533 U.S. 194 (2001). In support of this contention, Plaintiff asserts facts that are not in the record and contrary to the record evidence. For example, Plaintiff claims that the police entered his home. Opp. at 15. However, the evidence shows, and it has never been disputed, that the MPO Arrington, Officers Nelson and Lukanovic, and Chief Welsh walked into Plaintiff's open garage as Plaintiff sat in his car. There is no evidence, and Plaintiff has never claimed, that Defendants had to enter his home to get to the garage. Plaintiff also claims that he was attacked by the Defendants. *Id*. There is no evidence of Plaintiff being attacked. Plaintiff testified at his deposition, once the passenger side window was broken be stepped out of his car. Pl. Dep. 76:20-77:3. Aside from the misrepresentation of the facts, even more telling, is the fact that

Plaintiff has not even asserted a claim for assault and battery or for the use of excessive force in violation of the Fourth Amendment. Simply put, the facts Plaintiff relies upon are non-existing.

Lastly, Plaintiff argues that "[t]he Fourth and Fifth amendment give clearly established rights and are rights that police officers encounter and deal with on a daily, and on-going, basis. Thus, the police were also aware of the rights inasmuch that the understanding thereof is a part of their training." Opp. at 15. As the Defendants state in their motion, in *White, et al. v. Pauly, et al*. the Supreme Court "again … reiterated the longstanding principle that clearly established law should not be defined at a high level of generally." 137 S.Ct. 548, 552 (2017)(per curiam) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011). In other words, "[i]t is not enough to reiterate that the Fourth Amendment's restrictions against arrest without probable cause are clearly established: the inquiry must be made more contextually, at a finer level of specificity." *Wesby v. District of Columbia*, 765 F.3d 13, 26 (D.C. Circuit 2014). Moreover, "the clearly established law must be particularized to the facts of the case. Otherwise, plaintiffs would be able to convert the rule of qualified immunity ... into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights." *Pauly* (quoting *Anderson v. Creighton*, 483 U. S. at 640). Plaintiff has not contextualized his opposing argument to the facts in this instant case, but rather asserts broad Fourth Amendment principles, which are insufficient to defeat granting the individual Defendants qualified immunity.

## VI.   Qualified privilege

Plaintiff argument in opposition to the individuals' entitlement to summary judgment based on the qualified privilege defense, fails for the same reason Plaintiff's argument in opposition to qualified immunity fails. Accordingly, the individual Defendants are entitled to summary judgment.

**VII.   Defendants are entitled to summary judgment as to the intentional infliction of emotional distress claim in Count I**

Plaintiff argues that summary judgment should not be granted as to the IIED claim because the individual Defendants' conduct was extreme and outrageous.  Opp. at 16.  Here again, Plaintiff misstates the record evidence.  He claims that the Defendants "attacked his person for a considerable amount of time."  Opp. at 16.  Plaintiff totally ignores what is there for everyone to hear, which is his own 911 call.  SJ-Exh. 9 [14-11].  The 911 recording clearly demonstrates that Plaintiff was not attacked, harasses or mistreated in any way.

Plaintiff further claims that Chief Welsh and the other Defendants' "one mission in mind …was to place criminal liability on [Plaintiff]."  Opp. 16.  There is nothing in the record evidence to support this assertion.  Contrary to Plaintiff assertion, Chief Welsh's only motivation for asking Plaintiff to step out of the car was so that Plaintiff could be medically checked.  Welsh Dep. P16:15-P17:1.  Plaintiff did not appear to Chief Welsh to be well, *id*., P17:8-15, and Plaintiff appeared "glazed." *Id*., P18:16-P19:9.  Plaintiff has not offered any evidence that contradicts Chief Welsh's testimony.

Plaintiff's opposition consists of misstatements of the record evidence, unsupported assertions and lacks a coherent legal argument as to why Plaintiff's IIED claim survives summary judgment.  Accordingly, the District Defendants are entitled to summary judgment as to Plaintiff's IIED claim in Count I.

**VIII.   The District is entitled to judgment as a matter of law as to Counts IV and V**

In Count IV, Plaintiff asserts that "under the circumstance in this matter" the District negligently trained and supervised MPD police officers as follows: "(a) the failure to take such action as was reasonable and prudent in order to avoid risk of harm to Plaintiff …; (b) the failure to establish and/or enforce safe, proper and appropriate procedures or regulations that would

12

have controlled or governed the actions of its employees …; (c) failure to train its employees and/or agents in the proper methods of handling situations such as the one that existed at the incident location; (d) failure in its control and supervision of its employees in the handing of the situation such as the one the existed at the incident location." Complaint, Count IV at ¶ 51(a)-(d). Plaintiff argues that the District is not entitled to summary judgment as to the negligent training and supervision claim asserted in Count IV because expert testimony is not required to establish the appropriate standard of care. Opp. at 17-18.

According to Plaintiff, MPD's "training manuals and materials used in training police recruits establish the standard of care." *Id.* In this regard, Plaintiff relies on selected portions of an MPD training manual concerning the laws of arrest. Opp. Exh. Three [18, at pp. 53-58] and Exh, 5 [18, at pp. 63-66]. Contrary to Plaintiff's assertion, the MPD training manual does not establish a standard of care. *Jackson v. District of Columbia*, 541 F.Supp. 2d 334, 345 (D.D.C. 2008) (teletype that set forth the guidelines for investigating other officers within the MPD, "is merely an internal agency procedure, not a statute or regulation, it does not embody the standard of care.).

Plaintiff also suggests that the District's Fed. R. Civ. P. 30(b)(6) witness, Sergeant Darren Haskis, would can provide the requisite expert testimony because he trains police officers on the laws of arrest and MPD procedures. Opp. at 18. Sergeant Haskis does not qualify as an expert under the provisions of Fed. R. Civ. P. 26(a)(2). Plaintiff has not retained or designated Sergeant Haskis an expert witness. Sergeant Haskis has not submitted a report setting forth his opinions or identified any facts or reliable data as required to be produced under Rule 26(a)(2). Without an expert witness who can opine as to the appropriate standard of care relevant to police training

and supervision, Plaintiff cannot prove his negligence claims against the District.  Accordingly, the District is entitled to summary judgment as to Count IV.

The District is also entitled to summary judgment as to Plaintiff's *Monell* claim against the District in Count V.  Plaintiff's argument consists of a single paragraph made up of three sentences.  Plaintiff does not address any of the arguments or the supporting case law asserted by the District in its brief.  Accordingly, for the reason stated in the brief, the District is entitled to judgment as a matter of law as to Count V.

### Conclusion

For the reason stated in the Defendants motion for summary judgment and in this reply, the Defendants are entitled to judgment as a matter of law.

Respectfully submitted,

KARL A. RACINE
Attorney General for the District of Columbia

GEORGE C. VALENTINE
Deputy Attorney General
Civil Litigation Division

*/s/ Michael K. Addo*
MICHAEL K. ADDO [1008971]
Chief, Civil Litigation Division, Section IV

/s/David A. Jackson
DAVID A. JACKSON [471535]
Assistant Attorney General
Office of the Attorney General
441 Fourth Street, NW
Suite 630 South
Washington, DC  20001
 (202) 724-6618
 (202) 741-8999 (fax)
davida.jackson@dc.gov

14