# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

VERE O. PLUMMER,

      *Plaintiff*,

v.

DISTRICT OF COLUMBIA *et al.*,

      *Defendants*.

Civil Action No. 15-2147 (TJK)

## MEMORANDUM OPINION

On July 4, 2014, Plaintiff Vere O. Plummer celebrated our Nation's independence, as many Americans do, by drinking alcoholic beverages at a friend's party. In the wee hours of July 5, Plummer decided to drive himself home. While trying to maneuver his car in the alley behind his house, Plummer struck a neighbor's garage. Other neighbors called the police, who found Plummer in his own open garage, unconscious at the wheel of his car. After a protracted encounter, the police arrested Plummer.

Plummer filed this lawsuit against Defendants the District of Columbia (the "District"), the Metropolitan Police Department of the District of Columbia ("MPD"), and the District of Columbia Fire Department ("DCFD"), as well as four first responders who Plummer asserts were involved in his arrest: Officer Sandro Lukanovic, Lieutenant John Kutniewski, Officer John F. Nelson, and Battalion Fire Chief Henry Welsh. Plummer claims, among other things, that his arrest violated the Fourth Amendment to the U.S. Constitution and the common law of the District of Columbia, and that the District of Columbia negligently maintained the alley behind his house. Defendants have moved for summary judgment. ECF No. 14. For the reasons set forth below, Defendants' motion will be granted and judgment will be entered in their favor.

## I.    Factual and Procedural Background

Plummer lives on Fairmont Street in the District of Columbia.[1]  Pl.'s Resp. SoMF ¶ 1.

Plummer's garage, located on the rear of his lot, is detached from his home and opens onto an

alley that runs parallel to Fairmont Street.  *Id.* ¶ 20; *see also* Defs.' Ex. 9 (Plummer 911 call) at

5:25-45 (explaining that Plummer's garage is detached from his house).  His neighbors' garages

face the same alley.  Pl.'s Resp. SoMF ¶ 21.  The garage directly across from Plummer's belongs

to a neighbor named Kenneth Taylor.  *Id.* ¶ 7.

On July 4, 2014, Plummer went to an Independence Day party at a friend's house in

Maryland.  *Id.* ¶ 3.  While conceding that he consumed alcohol that evening, Plummer claims

that he had only "a couple of beers" (and possibly some spiked punch) and finished drinking in

the early evening.  *See id.* ¶ 4.  Early in the morning of July 5, Plummer drove himself home and

arrived sometime between 2:45 a.m. and 4:00 a.m.  *See id.* ¶ 5; Pls.' Opp'n at 2.  In Plummer's

telling, his car became stuck in a pothole, and while trying to "rock" the car out, he struck

Taylor's garage.  Am. Compl. ¶¶ 14-15; Defs.' Ex. 1 (Plummer Dep.) at 43:5-22, 46:1-22; Pl.'s

Resp. SoMF ¶ 8.

Another neighbor, Scott Landrum, called 911 to report the accident.  Defs.' Ex. 5

(Landrum 911 call) at 2:08-25, 4:20-32.  Landrum told the 911 operator that the car's engine was

still running, that smoke was rising from the tires, and that a man was unconscious behind the

wheel of the car.  *Id.* at 0:20-24, 1:28-56, 3:30-40.  Landrum then relayed that the man had

woken up and managed to park in his own garage.  *See id.* at 6:25-40; *see also* Defs.' Ex. 2

---

[1] In deciding this motion, the Court relied on the following documents: ECF No. 1-1 ("Am.
Compl."); ECF No. 15-2 ("Defs.' Br."); ECF No. 14-1 ("Defs.' SoMF"); ECF Nos. 14-3 to 14-
18 (Defendants' exhibits 1 through 16, each of which is cited as "Defs.' Ex. __"); ECF No. 18 at
3-22 ("Pl.'s Opp'n"); ECF No. 18 at 23-45 ("Pl.'s Resp. SoMF"); ECF No. 18 at 46-66
(Plaintiff's exhibits 1 through 5, each of which is cited as "Pl.'s Ex. __"); ECF No. 21 ("Defs.'
Reply").

(Landrum's declaration) (confirming this account); Defs.' Ex. 3 (declaration of a third neighbor) (similar). The unidentified driver turned out, of course, to be Plummer, whose own deposition testimony explains that it took him some time to back into his own garage, that he fell asleep in the midst of that effort, and that he succeeded only after a neighbor woke him. *See* Defs.' Ex. 1 (Plummer Dep.) at 60:6-61:22, 63:1-22.

Police, firemen, and paramedics subsequently arrived in the alley. Defs.' Ex. 5 (Landrum 911 call) at 8:40-50; Defs.' Ex. 2 ¶¶ 17-19; Defs.' Ex. 3 ¶ 13; Defs.' Ex. 7 (Nelson Dep.) at 13:13-14:3. Paramedics and fire officials were the first on the scene. Defs.' Ex. 2 ¶¶ 17-19; *see* Defs.' Ex. 7 (Nelson Dep.) at 13:13-14:3. Police officers then arrived as well, including two Defendants, Officer Lukanovic, *see* Defs.' Ex. 6 (Lukanovic Dep.) at 23:3-5, and Officer Nelson, *see* Defs.' Ex. 7 (Nelson Dep.) at 13:13-17. Officer Nelson spoke with the fire officials, who reported that Plummer appeared to be intoxicated but had refused medical assistance. *Id.* at 14:4-8. Officer Nelson also, at some point, interviewed Plummer's neighbors, who informed him—consistent with the 911 call—that they had found Plummer unconscious with the engine running after striking Taylor's garage, and that Plummer had been woken up and parked in his garage, where he had lost consciousness once more. *See id.* at 23:18-25:10; Defs.' Ex. 2 ¶ 19. The police officers personally observed damage to both Taylor's garage and Plummer's car. *See* Defs.' Ex. 7 (Nelson Dep.) at 19:18-20:16; Defs.' Ex. 8 (Arrington Dep.) at 31:4-12. They also observed, through the open garage door, Plummer unconscious again behind the wheel of his car. *See* Defs.' Ex. 7 (Nelson Dep.) at 15:15-16, 17:1-4. Two officers testified that Plummer's engine was running at this time, *see id.*; Defs.' Ex. 6 (Lukanovic Dep.) at 62:16-17, although the record

is not entirely clear on this point.[2]  Based on these facts, Officer Nelson concluded that Plummer was intoxicated.  Defs.' Ex. 7 (Nelson Dep.) at 15:11-18, 47:1-9.  Officers entered the garage and woke Plummer by knocking on his window.  Defs.' Ex. 6 (Lukanovic Dep.) at 62:16-19.

Once awake, Plummer appeared to the officers to be confused and disoriented.  *See id.* at 63:15-64:4; Defs.' Ex. 7 (Nelson Dep.) at 15:10-16:3.  Plummer mumbled unintelligibly and struggled to keep his eyes open.  *See* Defs.' Ex. 8 (Arrington Dep.) at 119:14-20.  Plummer also occasionally "revved" or "cranked" up his engine.  *Id.* at 119:21-120:9.  At a fire official's request, Plummer shifted the car's transmission into park.  Defs.' Ex. 10 (Welsh Dep.) at 16:5-10.  At some point, Plummer attempted to close the garage door, prompting officers to prevent it from closing on top of them.  *See* Defs.' Ex. 7 (Nelson Dep.) at 137:1-10.

As the encounter was unfolding, Plummer called 911 to complain about the officers' presence in his garage.  *See* Defs.' Ex. 9 (Plummer 911 call) at 0:01-1:00.  The officers, he said, may have damaged the garage when they prevented the door from closing.  *See id.* at 2:34-52, 12:25-56.  "I'm under siege!" he said.  *Id.* at 13:05-11.  The 911 operator—who had also taken Landrum's call—asked Plummer whether he had hit someone's garage.  *Id.* at 1:20-25.  "No I did not," Plummer answered.  *Id.* at 1:25-27.  "I'm in my garage, no vehicle has crashed.  There's no crash here."  *Id.* at 3:07-12.  After speaking with the officers, Plummer told the 911 operator, "These people are lying to me, they're telling me I hit a garage."  *Id.* at 7:27-7:31.  The

---

[2] While Officer Nelson initially testified that the engine was running when he arrived, he later said that he could not specifically recall whether the engine was running then.  *See* Defs.' Ex. 7 (Nelson Dep.) at 101:10-15.  And Officer Nelson wrote in the arrest report that Plummer subsequently "started" his car in the officers' presence, which may (though does not necessarily) imply that the engine was off when the officers arrived.  Defs.' Ex. 11 at 4.  Plummer apparently disputes that his engine was running when the officers arrived, although in doing so he does not cite to any specific portion of the record.  *See* Pl.'s Resp. SoMF ¶¶ 56, 76.  The Court will assume that this fact is disputed, but it is immaterial: the Court's analysis does not depend on whether the engine was running when the officers arrived.

911 operator, ever helpful, told Plummer, "Just be mindful that you're on a recorded line." *Id.* at 7:45-7:52. "Just do what the police ask you to do," the operator suggested. *Id.* at 9:46-49. "Are you crazy?" Plummer responded. *Id.* at 9:49-52.

Officials on the scene, including Chief Welsh of the fire department (one of the Defendants), tried to coax Plummer out of his vehicle. According to Chief Welsh, Plummer appeared to be either intoxicated or having a medical emergency. Defs.' Ex. 10 (Welsh Dep.) at 18:5-15. In particular, Chief Welsh was concerned that Plummer might be having a "diabetic emergency" and felt that it was his "duty to act" for the welfare of both Plummer and, in the event Plummer chose to drive away, others as well. *Id.* at 19:2-9, 20:16-21:4, 27:4-5. Chief Welsh urged Plummer to exit the car so that officers could check his blood-sugar level. *Id.* at 19:18-20. At some point,[3] officers did in fact test his blood sugar, which was normal. Defs.' Ex. 10 (Welsh Dep.) at 24:5-8; Pl.'s Resp. SoMF ¶ 94.

After Plummer refused to exit the vehicle despite repeated requests, fire officials broke the window of Plummer's car. *Id.* at 27:16-28:12. Plummer then either exited or was removed from the vehicle. *See* Defs.' Ex. 6 (Lukanovic Dep.) at 57:16-58:7; Am. Compl. ¶ 30. Because there was no officer on the scene who was certified to administer a field sobriety test, police did not test Plummer's sobriety there. Defs.' Ex. 7 (Nelson Dep.) at 22:9-11, 42:11-14. Plummer was arrested for having failed to leave identification after colliding with Taylor's garage, in violation of D.C. Code § 50-2201.05c, but not for driving while intoxicated. *Id.* at 42:15-20; Defs.' Ex. 11 (arrest report) at 2. Plummer subsequently failed a field sobriety test at the police

---

[3] In his response to Defendants' statement of material facts, Plummer does not dispute that his blood sugar was tested *after* he exited the vehicle. Pl.'s Resp. SoMF ¶ 94. But in his deposition, he testified that he allowed fire officials to test his blood sugar while still in his car, *before* officials resorted to breaking his window. Pl.'s Ex. 4 (Plummer dep.) at 80:2-10. The Court assumes this fact is disputed, but it does not alter the outcome.

station.  *See* Defs.' Ex. 12 (declaration of officer who administered sobriety test).  Officer Nelson

testified that he should have also arrested Plummer for driving while intoxicated, and that his

failure to do so was a "rookie" mistake.  Defs.' Ex. 7 (Nelson Dep.) at 42:15-20, 53:12-54:3.

Nonetheless, Plummer was never charged with drunk driving.  *Id.* at 22:12-14.  All charges

against Plummer arising from the incident were ultimately dismissed just before trial.  Am.

Compl. ¶ 33.

Even before he was arrested, Plummer had his heart set on litigation.  "I'm gonna sue the

damn D.C. government royally," he told the 911 operator.  Defs.' Ex. 9 (Plummer 911 call) at

6:16-20.  "You all gonna pay me. . . .  I think they call that false imprisonment."  *Id.* at 15:41-55.

And Plummer did indeed bring false imprisonment claims—as well as several others—against

the District when he filed this lawsuit in the Superior Court of the District of Columbia on July 5,

2015.  ECF No. 3-1 (Superior Court record) at 99-109.  After receiving two extensions of time to

serve his original complaint, and briefly having his case dismissed for failure to serve process (an

order that was later vacated), Plummer ultimately served his amended complaint (the operative

pleading).  *See id.* at 23-40, 84-97.  Defendants, asserting federal question jurisdiction, timely

removed the action to this Court in December 2015.  ECF No. 1 (notice of removal).  After

discovery, Defendants filed the instant motion for summary judgment.  ECF No. 14.

## II.    Legal Standard

Under Rule 56, a court must grant summary judgment "if the movant shows that there is

no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

law."  Fed. R. Civ. P. 56(a).  "Summary judgment is appropriately granted when, viewing the

evidence in the light most favorable to the non-movants and drawing all reasonable inferences

accordingly, no reasonable jury could reach a verdict in their favor."  *Lopez v. Council on Am.-*

*Islamic Relations Action Network, Inc.*, 826 F.3d 492, 496 (D.C. Cir. 2016).  Courts "are not to

make credibility determinations or weigh the evidence." *Id.* (quoting *Holcomb v. Powell*, 433 F.3d 889, 895 (D.C. Cir. 2006)). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Id.* (alteration in original) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986)). "The movant bears the initial burden of demonstrating that there is no genuine issue of material fact." *Montgomery v. Risen*, 875 F.3d 709, 713 (D.C. Cir. 2017). "In response, the non-movant must identify specific facts in the record to demonstrate the existence of a genuine issue." *Id.*

## III. Analysis

As explained below, Defendants are entitled to judgment in their favor on all seven counts of Plummer's complaint.

### A. Counts II, IV and VI: Trespass, Destruction of Property, Negligence and Malicious Prosecution

Count II of Plummer's complaint is for "Trespass and Destruction of Property/Vicarious Liability," and is brought against MPD and DCFD. Am. Compl. at 10. Counts IV and VI of Plummer's complaint, for negligence and malicious prosecution, respectively, are brought against MPD. *Id.* at 11; *id.* ¶ 64. Defendants argue that they are entitled to summary judgment on all claims against MPD and DCFD because those entities do not have the capacity to be sued in their own names under District of Columbia law. Defs.' Br. at 10-13; *see, e.g.*, *Silver v. D.C. Metro. Police Dep't*, 939 F. Supp. 2d 20, 22 (D.D.C. 2013); *Ray v. District of Columbia*, 535 A.2d 868, 869 n.2 (D.C. 1987). Plummer concedes that those entities cannot be sued. *See* Pl.'s Opp'n at 4. Because Counts II, IV and VI are asserted only against MPD and DCFD, these claims fail.

Plummer suggests in his briefing that his complaint should be construed liberally such that each count is asserted against each Defendant against which he may possibly have a claim. *See id.* at 11. But he is not proceeding *pro se* and must comply with the normal pleading standards under Federal Rule of Civil Procedure 8(a), which requires the complaint to explain "which defendants committed each violation." *Cheeks v. Fort Myers Constr. Corp.*, 71 F. Supp. 3d 163, 169 (D.D.C. 2014). And his complaint does just that. Count II asserts "separate causes of action against MPD and DCFD for the conduct of its defendant employees." Am. Compl. at 10. Count IV asserts "a separate cause of action against defendant MPD." *Id.* at 11. And Count VI is based on the "institution of criminal proceedings against Plaintiff by the MPD," without even mentioning any other Defendant. *Id.* ¶ 64. Even now, Plummer has not sought leave to further amend his complaint, or identified in his opposition papers any other Defendant he thinks was responsible for the malicious prosecution alleged in Count VI. Having clearly pleaded Counts II, IV and VI against only MPD and DCFD, Plummer cannot avoid summary judgment now that it is clear that those entities are not proper defendants. And in any event, in his opposition, Plummer has failed to specifically identify any evidence sufficient to create a genuine issue of material fact in support of these claims. Therefore, the Court will enter judgment for Defendants on Counts II, IV and VI.

### B.     Count III: Deprivation of Civil Rights

Plummer brings Count III under 42 U.S.C. § 1983, claiming that MPD and three of the individual defendants (Lukanovic, Kutniewski, and Nelson) violated his rights under the Fourth and Fifth Amendments to the U.S. Constitution by arresting him without a warrant. *See* Am. Compl. ¶ 49. As explained above, the claim against MPD must be dismissed. *See, e.g., Silver*, 939 F. Supp. 2d at 22. To prevail on his § 1983 claim against the individual defendants, Plummer must establish that (1) "a person acting under color of state law" committed (2) a

"violation of a right secured by the Constitution and laws of the United States." *West v. Atkins*, 487 U.S. 42, 48 (1988). Defendants argue that Plummer has failed to show a constitutional violation or, alternatively, that the officers enjoy qualified immunity. *See* Defs.' Br. at 16-26. The Court agrees that Plummer has not established a constitutional violation.[4]

This claim must be analyzed under the Fourth Amendment, not the Fifth Amendment. "Where a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims." *Elkins v. District of Columbia*, 690 F.3d 554, 562 (D.C. Cir. 2012) (quoting *Albright v. Oliver*, 510 U.S. 266, 273 (1994)) (internal quotation marks omitted). Plummer alleges an unlawful seizure of his person, *see* Am. Compl. ¶ 49, and so the Fourth Amendment controls this claim. *See Graham v. Connor*, 490 U.S. 386, 394-95 (1989).

"A warrantless arrest is reasonable if the officer has probable cause to believe that the suspect committed a crime in the officer's presence." *District of Columbia v. Wesby*, 138 S. Ct. 577, 586 (2018). When determining whether an officer had probable cause, courts "examine the events leading up to the arrest, and then decide whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to probable cause." *Id.* (quoting

---

[4] The Court notes that it is typically more appropriate to address qualified immunity before passing on a constitutional issue. *Ali v. Rumsfeld*, 649 F.3d 762, 772-73 (D.C. Cir. 2011) (citing *Pearson v. Callahan*, 555 U.S. 223 (2009)). But the Court concludes that, in this case, considerations of judicial economy militate in favor of addressing the underlying constitutional violation Plummer has alleged. Plummer's constitutional and common law claims raise similar questions about the lawfulness of his arrest. Additionally, Plummer asserts a claim for municipal liability in Count V based on the same underlying constitutional violations, and municipalities do not enjoy qualified immunity. *See Pearson*, 555 U.S. at 242-43. Thus, deciding the constitutional claims against the individual defendants on the basis of qualified immunity would not avoid addressing the underlying issues concerning the lawfulness of Plummer's arrest.

*Maryland v. Pringle*, 540 U.S. 366, 371 (2003)) (internal quotation marks omitted). Probable

cause is "'a fluid concept' that is 'not readily, or even usefully, reduced to a neat set of legal

rules.'" *Id.* (quoting *Illinois v. Gates*, 462 U.S. 213, 232 (1983)). "It 'requires only a probability

or substantial chance of criminal activity, not an actual showing of such activity.'" *Id.* (quoting

*Gates*, 462 U.S. at 244 n.13). The government bears the burden of showing probable cause when

seeking to justify a warrantless arrest. *Carr v. District of Columbia*, 587 F.3d 401, 408-09 (D.C.

Cir. 2009) (citing *Dellums v. Powell*, 566 F.2d 167, 175-76 (D.C. Cir. 1977)). An arrest is valid

even if probable cause existed only for a crime different than the one actually charged. *See*

*United States v. Bookhardt*, 277 F.3d 558, 564-67 (D.C. Cir. 2002).

In this case, the offense most obviously applicable to Plummer's conduct was operating a

motor vehicle while impaired, in violation of D.C. Code § 50-2206.14: "No person shall operate

or be in physical control of any vehicle in the District while the person's ability to operate or be

in physical control of a vehicle is impaired by the consumption of alcohol or any drug or any

combination thereof." The statute requires only "that level of impairment at which a person is

*appreciably* less able, either mentally or physically or both, to exercise the clear judgment and

steady hand necessary to handle as powerful and dangerous a mechanism as a modern

automobile with safety to himself and the public." *Muir v. District of Columbia*, 129 A.3d 265,

272 (D.C. 2016) (quoting *Taylor v. District of Columbia*, 49 A.3d 1259, 1267 (D.C. 2012)). In

addition, a person need not be actively driving to be in "physical control" of a vehicle. Rather,

courts have found such control where an unconscious defendant was "alone in his [parked] car

and behind the steering wheel" and "the ignition keys were in his pocket." *Bell v. District of*

*Columbia*, 132 A.3d 854, 857 (D.C. 2016). "In that position and with the keys at hand, [the

defendant] was capable of starting the vehicle should he have awakened and, in his impaired

state, made a decision to drive." *Id.* Moreover, "where the language of a motor vehicle statute does not restrict its application to public streets and highways the statute applies throughout the jurisdiction and extends to both public and private property." *Henig v. District of Columbia*, 213 A.2d 824, 825-26 (D.C. 1965); *see also Taylor v. United States*, 662 A.2d 1368, 1370-71 (D.C. 1995) (holding that a statute prohibiting unlicensed drivers from being in control of a vehicle applied on both public and private property). The statute at issue here, D.C. Code § 50-2206.14, is not limited to public highways, and thus prohibits the impaired operation of a motor vehicle on both public and private property.

Defendants' evidence easily establishes that officers on the scene had probable cause to believe that Plummer was violating D.C. Code § 50-2206.14 in their presence. One of Plummer's neighbors had called 911 to report that someone, after crashing into Taylor's garage, was unconscious in the alley in a running car, and that this person, after being awoken, backed into his own garage. *See* Defs.' Ex. 2 ¶ 12; Defs.' Ex. 5 (Landrum 911 call). When the officers arrived on the scene, they observed damage to both Taylor's garage and Plummer's car, and saw Plummer slumped behind the wheel of his car. *See* Defs.' Ex. 7 (Nelson Dep.) at 16:17-17:4, 20:1-16; Defs.' Ex. 8 (Arrington Dep.) at 31:4-12. These facts provided probable cause to believe that Plummer was violating D.C. Code § 50-2206.14. First, he was in physical control of his vehicle under the law of the District of Columbia. And second, common sense suggested he was impaired by alcohol: people in full control of their faculties generally do not nap in their cars just after crashing into their neighbors' garages. Indeed, fire officials reported to the officers that Plummer appeared to be intoxicated. Defs.' Ex. 7 (Nelson Dep.) at 14:4-8. Moreover, the timing of the incident—in the wee hours of the night of July 4-5, a night notorious for drunk driving—suggested as much. And after the officers entered the garage, further events reinforced

their suspicions.  When the officers woke Plummer to speak to him, his behavior was erratic and disoriented.  *See* Defs.' Ex. 6 (Lukanovic Dep.) at 63:15-64:4; Defs.' Ex. 7 (Nelson Dep.) at 15:10-16:3; Defs.' Ex. 8 (Arrington Dep.) at 119:2-120:12; Defs.' Ex. 10 (Welsh Dep.) at 18:4-17.  He was also unaware of having struck Taylor's garage, even though he had done so just a short time earlier.  *See* Defs.' Ex. 9 (Plummer 911 Call) at 3:07-12, 7:10-40.

Because Defendants have made a showing that probable cause existed for the arrest, Plummer must come forth with specific facts to show that there is a genuine issue as to the existence of probable cause.  *See Montgomery v. Risen*, 875 F.3d 709, 713 (D.C. Cir. 2017).  To the extent that Plummer disputes Defendants' account, he is required, under the Local Rules of this Court, to respond to Defendants' statement of material facts by identifying both the facts in dispute *and* the specific record evidence supporting his version of events.  *See* Local Civil Rule 7(h); *Estate of Parsons v. Palestinian Auth.*, 651 F.3d 118, 136-37 (D.C. Cir. 2011) (Tatel, J., concurring) (citing *Jackson v. Finnegan, Henderson, Farabow, Garrett & Dunner*, 101 F.3d 145, 154 (D.C. Cir. 1996)); *Lucas v. Duncan*, 574 F.3d 772, 777-78 (D.C. Cir. 2009); *Burke v. Gould*, 286 F.3d 513, 517-18 (D.C. Cir. 2002).  Plummer has failed to do so.

In addition to other deficiencies in his statement of material facts,[5] in disputing Defendants' version of events, Plummer cites no record evidence of his own that creates a genuine issue of material fact.  *See* Pl.'s Resp. SoMF.  That is true, for example, of the key fact

---

[5] Plummer's submission frequently fails to approach this litigation with the seriousness it deserves.  For example, he disputes Defendants' recitation of his address "to the extent that the Defendants do not indicate whether the Plaintiff lives in the state of Washington or Washington, D.C."  Pl.'s Resp. SoMF ¶ 1.  Even more distressingly, Plummer at times disputes facts that he himself has asserted.  For example, Defendants claim that Plummer "lost control of his car and struck Mr. Taylor's garage."  Defs.' SoMF ¶ 8.  Plummer disputes this statement "to the extent that Plaintiff did not state that he lost control of his car."  Pl.'s Resp. SoMF ¶ 8.  But Plummer's Verified Amended Complaint—which he signed under oath—states just that: he "lost control of the speed of the vehicle and struck his neighbor's garage."  Am. Compl. ¶ 15.

that he was found slumped over the wheel of the car. *See id.* ¶¶ 48, 56. Plummer purports to dispute this fact—but he does so without citing any evidence to the contrary, even his own testimony. *See id.* (In fact, he has included only a single page of his own deposition transcript among his opposition papers. *See* Pl.'s Ex. 4.) This is plainly insufficient to create a genuine issue of material fact.

Plummer also makes legal arguments that are unavailing. He argues that Defendants lacked probable cause to arrest him for leaving the scene of a collision without showing identification, in violation of D.C. Code § 50-2201.05c. *See* Pl.'s Opp'n at 12-13. That—not operating while impaired—was the crime for which he was actually arrested. *See* Defs.' Ex. 7 (Nelson Dep.) at 42:11-20; Defs.' Ex. 11 (arrest report). And he was eventually charged with leaving while colliding, as well as operating a motor vehicle with a suspended license. Am. Compl. ¶ 31. But all of that is of no moment. It is well established that an arrest is constitutionally valid if there is probable cause for any charge, even one different from the charge actually made. *See Bookhardt*, 277 F.3d at 564-67. Because there was probable cause to support charging Plummer with operating while impaired, the Court need not decide whether probable cause also supported the charge of leaving after colliding.

Plaintiff further argues that, because his garage is private property, the police were obligated to obtain a warrant before entering and then arresting him there. *See* Pl.'s Opp'n at 13. It is, of course, true that officers require a warrant in order to enter a home to effect an arrest, absent exigent circumstances. *See, e.g.*, *In re Sealed Case 96-3167*, 153 F.3d 759, 764 (D.C. Cir. 1998) (citing *Payton v. New York*, 445 U.S. 573 (1980)). And the Supreme Court recently reaffirmed that a warrant is required to search the "curtilage" surrounding the home—including

places where cars are typically parked. *See Collins v. Virginia*, 138 S. Ct. 1663 (2018).[6] Nonetheless, assuming that this principle applies equally to Plummer's open garage, police did not need a warrant to enter it, because exigent circumstances justified the officers' presence there. "Exigency can justify a warrantless search 'when there is *compelling need* for official action and *no time* to secure a warrant.'" *Corrigan v. District of Columbia*, 841 F.3d 1022, 1030 (D.C. Cir. 2016) (quoting *Michigan v. Tyler*, 436 U.S. 499, 509 (1978)). Such circumstances include "hot pursuit of a fleeing suspect" and the "'need to protect or preserve life or avoid serious injury.'" *Id.* (quoting *Brigham City v. Stuart*, 547 U.S. 398, 403 (2006)). The officers bear the "heavy burden" of justifying the intrusion by showing "reasonableness based on particular circumstances." *Id.* They must have probable cause to believe that the exigency exists, and the intrusion must be no greater than necessary. *Id.*

The facts of this case, involving an impaired driver behind the wheel of his car, leave no doubt that the officers had probable cause to believe that stepping from the alley into Plummer's open garage was needed "to protect or preserve life or avoid serious injury." *Id.* (quoting *Brigham City*, 547 U.S. at 403). The Supreme Court has recognized the government's powerful interest in "neutralizing the threat posed by a drunk driver who has already gotten behind the wheel." *Birchfield v. North Dakota*, 136 S. Ct. 2160, 2179 (2016). As discussed above, police had clear grounds to believe that Plummer was impaired in some way. That alone meant it was

---

[6] Defendants seek to justify the warrantless arrest based solely on a District of Columbia statute. *See* Defs.' Br. at 19. But it is fundamental, of course, that the "'Constitution's protections concerning search and seizure' do not vary with state arrest law." *Amobi v. D.C. Dep't of Corr.*, 755 F.3d 980, 989 (D.C. Cir. 2014) (quoting *Virginia v. Moore*, 553 U.S. 164, 173 (2008)). Thus, if an arrest runs afoul of the Fourth Amendment, local law to the contrary cannot render the arrest constitutional. *See Payton*, 445 U.S. at 576. The Court notes that this is only one of several deficiencies in Defendants' motion papers, which include other substantive and technical errors. While the facts in the record support summary judgment for Defendants, these deficiencies have increased the burden on the Court in deciding the motion.

reasonable for them to conclude that leaving Plummer at the wheel would endanger the public, and additional facts heightened that risk. According to his neighbor's 911 call, Plummer had already struck Taylor's garage, fallen unconscious, and then started driving again. *See* Defs.' Ex. 5 (Landrum 911 call). Police observed, consistent with the earlier 911 call, signs that Plummer's car had indeed collided with his neighbor's garage. *See* Defs.' Ex. 7 (Nelson Dep.) at 20:1-16. These circumstances raised the obvious danger—noted by the officers who were there—that Plummer might, upon regaining consciousness, return to the streets and cause more damage, this time to people instead of property. *See* Defs.' Ex. 8 (Arrington Dep.) at 62:19-63:3; Defs.' Ex. 10 (Welsh Dep.) at 21:2-11. Indeed, courts across the country have recognized that a drunk person sitting behind the wheel of a car poses precisely this threat to the community, even when the person has slipped into unconsciousness. *See Bell*, 132 A.3d at 857 & n.3 (collecting cases). The need to address this danger plainly justified the officers' actions in stepping into Plummer's open garage. Moreover, subsequent events served to confirm the officers' concerns, since—even if the engine was not running when the officers first arrived— later in the encounter, Plummer revved it up in the officers' presence, *see* Defs.' Ex. 8 (Arrington Dep.) at 119:21-120:9.

Police also had probable cause to believe that Plummer himself was in danger. The need "to render emergency assistance to an injured occupant or to protect an occupant from imminent injury" justifies warrantless entry into the home. *Kentucky v. King*, 563 U.S. 452, 460 (2011) (quoting *Brigham City*, 547 U.S. at 403). Here, the first responders were paramedics and fire officials who attempted (without success) to offer medical assistance to Plummer. Defs.' Ex. 2 ¶ 18; Defs.' Ex. 7 (Nelson Dep.) at 13:18-14:8. When police officers arrived they were told as much, and personally observed Plummer slumped over the wheel of his car. *See, e.g.*, Defs.' Ex.

7 (Nelson Dep.) at 14:4-8, 16:17-17:4.  Neighbors reported that Plummer had also become unconscious earlier, after crashing into Taylor's garage.  *See* Defs.' Ex. 5 (Landrum 911 call) at 1:45-2:20.  While one possible inference—the most likely one, given the context—was that Plummer was merely drunk, it was also reasonable for the officers to be concerned that he was having a medical emergency.  Indeed, the uncontroverted evidence shows that officers on the scene reasonably feared that Plummer might be in diabetic shock and sought to measure his blood-sugar level.  *See* Defs.' Ex. 7 (Nelson Dep.) at 69:4-21; Defs.' Ex. 10 (Welsh Dep.) at 19:6-20, 27:4-5.  The entry into Plummer's garage was therefore also justified to ensure that he received prompt medical evaluation and possible treatment.

In short, given the facts the officers encountered, which involved immediate threats to the safety of both Plummer and the public, it was reasonable under the Fourth Amendment for the officers to step into his open garage to respond to the exigency.  Thus, their entry was lawful, and they needed only probable cause to believe that Plummer had committed a crime in their presence—which they had—to justify the warrantless arrest.  *See United States v. Winchenbach*, 197 F.3d 548, 553-54 (1st Cir. 1999); *Sheik-Abdi v. McClellan*, 37 F.3d 1240, 1245 (7th Cir. 1994).  Therefore, the Court concludes that the arrest was lawful, and will enter judgment for Defendants on Count III.

### C.    Count I: False Arrest, False Imprisonment, and Intentional Infliction of Emotional Distress ("IIED")

Count I asserts claims of false arrest, false imprisonment, and IIED against MPD, Lukanovic, Kutniewski, and Nelson under District of Columbia law.  Like Plummer's federal claims, these claims rest entirely on his allegation that his arrest was unlawful.  *See* Am. Compl. ¶¶ 35-43.  As explained above, the claims against MPD have been dismissed, and so the Court will analyze whether the individual defendants are entitled to summary judgment.

All three causes of action rise and fall together. "'False arrest' is indistinguishable as a practical matter from the common law tort of 'false imprisonment.'" *Enders v. District of Columbia*, 4 A.3d 457, 461 (D.C. 2010). In evaluating either claim, the key issue is whether the arrest was lawful. *See id.* Under District of Columbia law, as under federal law, the government has the burden to prove that a warrantless arrest was valid. *Id.* at 462. And, again as under federal law, an officer may make a warrantless arrest for any offense committed in her presence. *See id.* at 462-63; D.C. Code § 23-581(a)(1)(B). Moreover, where an arrest is legally justified, the arrest alone cannot serve as the basis for a claim of IIED. *See Smith v. United States*, 843 F.3d 509, 513 (D.C. Cir. 2016) (citing *Kotsch v. District of Columbia*, 924 A.2d 1040, 1046 (D.C. 2007)). Nor can a claim for IIED rest on officers' "use of reasonable force in effectuating an arrest." *Campbell v. District of Columbia*, 245 F. Supp. 3d 78, 90 (D.D.C. 2017); *see Magwood v. Giddings*, 672 A.2d 1083, 1088-89 (D.C. 1996).

These claims fail for largely the same reasons as Plummer's Fourth Amendment claim. The police had probable cause to believe that Plummer was operating a vehicle while impaired in their presence, and thus had valid grounds to make a warrantless arrest under District of Columbia law.

The Court notes one relevant difference between District of Columbia and federal law, although it does not change the outcome. As explained above, under federal law an arrest is valid so long as there was probable cause to believe the defendant committed *any* offense, not necessarily the one actually charged. District of Columbia law also recognizes this principle, but requires an additional showing that "the consequences for the plaintiff probably would have been substantially as unfavorable if he had been arrested on the charge on which the defense seeks to rely after the fact." *Karriem v. District of Columbia*, 717 A.2d 317, 323 (D.C. 1998) (quoting

*Etheredge v. District of Columbia*, 635 A.2d 908, 920-21 (D.C. 1993)). That is, the fact that the accused could have been arrested for a minor offense (such as a misdemeanor weapons charge) cannot serve as a *post hoc* justification if the accused was actually charged with a more serious offense (such as a felony larceny charge). *See Etheredge*, 635 A.2d at 920.

This added requirement does not change the result in Plummer's case. The crime Plummer was charged with—leaving while colliding where the only damage is to property— carries a maximum sentence of 30 days if the defendant is a first-time offender, or 90 days if the person is a repeat offender. *See* D.C. Code § 50-2201.05c(d)(2)(A)-(B). Operating while impaired leads to more severe penalties: a first offense carries a maximum sentence of 90 days, and subsequent violations carry jail terms of up to a year. *See* D.C. Code § 50-2206.15(a)-(c). Because the crime actually charged was *less* serious than operating while impaired—which, as discussed above, the officers clearly had probable cause to believe Plummer was committing in their presence—probable cause for operating while impaired adequately justifies the arrest.

Plummer argues in support of his IIED claim that officers "attacked his person," "abused" and frightened him, and unlawfully "damaged his property." Pl.'s Opp'n at 16. As an initial matter, Plummer's complaint appears to plead this claim based only on the fact of the arrest itself. *See* Am. Compl. ¶ 41. Because the arrest was lawful, the claim fails. *Smith*, 843 F.3d at 515-16 (citing *Kotsch*, 924 A.2d at 1046). In any event, to the extent Plummer now asserts that police engaged in outrageous conduct over and above the arrest, he has not created a genuine issue of material fact. The evidence in the record shows only that police instructed Plummer to exit his vehicle, that they broke his car window after he repeatedly refused, that (viewing the record most favorably to him) they removed him from the vehicle, and that they

may have damaged his garage door when they prevented it from closing on them.[7]  This proportionate use of force incident to Plummer's arrest cannot support an IIED claim.  *Compare Hargraves v. District of Columbia*, 134 F. Supp. 3d 68, 94 (D.D.C. 2015) (collecting cases in which IIED claims failed where officers merely drew weapons or used a chokehold to break up a fight), *with Xingru Lin v. District of Columbia*, 268 F. Supp. 3d 91, 103-04 (D.D.C. 2017) (collecting cases in which more egregious conduct, such as slamming the plaintiff on the hood of a car or killing his dog, sufficed to make out an IIED claim).  Indeed, to support an IIED claim, "defendant's actions must proximately cause the plaintiff emotional distress 'of so acute a nature that harmful physical consequences might be not unlikely to result.'"  *Kotsch*, 924 A.2d at 1046 (quoting *Clark v. Associated Retail Credit Men of Wash., D.C.*, 105 F.2d 62, 65 (D.C. Cir. 1939)).  Accordingly, where the plaintiff "did not seek medical assistance for physical or psychological injury," the District of Columbia Court of Appeals has required expert testimony to support a claim that the conduct "caused severe emotional distress."  *Id.*  Plummer has introduced no such evidence, providing yet another reason why this claim fails.

Therefore, the Court will enter judgment for Defendants on Count I.

### D.     Count V: Negligence, Municipal Liability, and Agency

Count V, while captioned as "negligence," in fact attempts to hold the District liable for the individual officers' conduct under three different theories: negligent supervision, *see* Am. Compl. ¶¶ 56-57, agency, *see id.* ¶¶ 60-62, and municipal liability under § 1983, *see id.* ¶¶ 58-59. Defendants argue, among other things, that Plummer has failed to establish evidence sufficient to support these claims.  *See* Defs.' Br. at 31-32.

---

[7] Plummer's opposition brief cites a portion of his deposition testimony that, in his view, supports a claim that officers used more force than their own testimony describes.  *See* Pl.'s Opp'n at 16.  But neither party has introduced that portion of his testimony into the record, and thus the Court cannot consider it.  *See* Fed. R. Civ. P. 56(c)(1).

All of these theories fail because each seeks to hold the District liable for the allegedly wrongful arrest of Plummer. *See* Am. Compl. ¶¶ 55-62. As explained above, the arrest was lawful. For that reason alone, the Court must enter judgment for Defendants on this count. The Court also notes that, to the extent that Plummer asserts municipal liability under § 1983, he must show that a "policy or custom" of the District caused his purported constitutional injury. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978); *Blue v. District of Columbia*, 811 F.3d 14, 18-19 (D.C. Cir. 2015). Plummer has failed to introduce sufficient evidence of such a policy or custom. Therefore, the Court will grant summary judgment for Defendants on Count V.

### E.     Count VII: Negligence

Finally, in Count VII, Plummer alleges that the District was negligent in failing to maintain the alley behind his house, leading to the pothole that he encountered on the morning of July 5, 2014. *See* Am. Compl. ¶¶ 66-68. "Before the District may be liable for failure to maintain a roadway, it must have notice (actual or constructive) of an unsafe or dangerous condition." *Tucci v. District of Columbia*, 956 A.2d 684, 699 (D.C. 2008). "'The existence of prior notice,' is not enough, however; a plaintiff must demonstrate that the street is 'in fact unreasonably dangerous.'" *Id.* (quoting *District of Columbia v. Freeman*, 477 A.2d 713, 718-19 (D.C. 1984)). "The plaintiff has the burden of establishing that a violation of the reasonable standard of care is the proximate cause of the injury sustained." *Id.* (*quoting District of Columbia v. Cooper*, 445 A.2d 652, 655 (D.C. 1982) (en banc)). In cases involving relatively minor defects, expert testimony is required to establish the relevant standard of care. *See id.* at 699-700.

Here, Defendants have introduced undisputed evidence that the District had no notice that the alley behind Plummer's house was in poor condition. *See* Pl.'s Resp. SoMF ¶¶ 110-113.

Indeed, Plummer himself testified that he had not observed a pothole in the alley before the morning of July 5, 2014.  *Id.* ¶ 16.  Plummer also has not introduced any expert testimony as would be required to make out this claim.  Indeed, he has not addressed the merits of Count VII in his opposition brief at all.[8]  Therefore, the Court will grant summary judgment for Defendants on Count VII.

## IV.    Conclusion

For all of the above reasons, Defendants' Motion for Summary Judgment (ECF No. 14) will be granted, and judgment entered for Defendants, in a separate order.

/s/ Timothy J. Kelly
TIMOTHY J. KELLY
United States District Judge

Date: June 20, 2018

---

[8] Plummer did address Defendants' argument that Count VII should be dismissed because he failed to comply with the notice requirement set forth in D.C. Code § 12-309.  *See* Pl.s' Opp'n at 4-12.  The Court finds it unnecessary to resolve that issue, because it is plain that the Court must grant summary judgment for Defendants on the merits.  The Court notes the majority view among judges in this District that compliance with § 12-309 is not a jurisdictional requirement, *see Maldonado v. District of Columbia*, 924 F. Supp. 2d 323, 332 (D.D.C. 2013), which means that the Court is not required to address it before turning to the merits of Plummer's claims.